**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Kristina Lebedeva, | ) | |
| Plaintiff, | ) | Case Number: |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| Fitness International, L.L.C., d/b/a | ) | Magistrate Judge: |
| LA Fitness, | ) | |
| Defendant. | ) | |
| | ) | Jury Trial Demanded |

**I.     INTRODUCTION**

1. Since the summer of 2015, defendant has failed to repair or replace the elevator that serves the only accessible route to the locker rooms in its health club. Ms. Kristina Lebedeva, a person with a disability, has been a long time member of this club and requires an accessible route to the locker room to have full and equal enjoyment of the defendant's facilities. This Complaint seeks an order compelling defendant to repair or replace this elevator so that Ms. Lebedeva can use the locker rooms.

**II.    JURISDICTION**

2. This case arises under the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101 *et seq*.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343.

4. Venue is proper within this District pursuant to 28 U.S.C. § 1391.

### III.    PARTIES

*Plaintiff*

5.   Plaintiff Kristina Lebedeva is a natural person who resides in the City of Chicago, Cook County, Illinois. Kristina has a mobility impairment that requires her to use a wheelchair. Because of her mobility impairment, swimming is one of her chief forms of exercise.

*Defendant*

6.   Fitness International, L.L.C. is a corporation with its principal office in Irvine, California.

7.   Locally, defendant does business as L.A. Fitness. L.A. Fitness offers health club services to the general public. Among the facilities owned by defendant and operated as a health club is the club located at 355 E. Grand Avenue, Chicago, Illinois ("Streeterville Club").

### IV.    JURY DEMAND

8.   Plaintiff demands a jury trial on all issues so triable.

### V.    STATEMENT OF FACTS

9.   Kristina is diagnosed with juvenile rheumatoid arthritis, muscular degeneration, and severe osteoporosis. This condition is permanent.

10.  Kristina requires the use of a wheelchair in order to move around.

11.  Kristina has almost no use of her legs and cannot climb stairs.

12.  Kristina's doctor recommends that she respond to the degenerative qualities of her medical condition through regular exercise. Because of Kristina's mobility limits, her doctor primarily recommends that Kristina swim.

13.  On or about February of 2010, complying with her doctor's recommendation, Kristina joined the Streeterville Club.

14. The location of the Streeterville Club is convenient for Kristina because it is near her home.

15. The Streeterville Club is also desirable because it has an infinity pool.

16. The infinity pool has an edge that allows Kristina to enter and exit the pool's water without substantial additional assistance.

17. Within the Streeterville Club the pool is on the Club's main floor and the locker rooms are on the floor above.

18. The locker rooms can only be accessed from the main floor by climbing stairs or using an elevator located inside the Club.

19. To use the pool, Kristina took the elevator to the locker room, with assistance changed into a swimsuit, then used the elevator to return to the pool floor to swim. When done swimming, she repeated those steps to change back into street clothes.

20. On or about the beginning of 2011, Kristina was unable to use the Streeterville Club for an extended period because of her health, and she let her membership expire.

21. After Kristina's membership expired, defendants purchased the Streeterville Club and began operating it under the name of L.A. Fitness.

22. On or around November 19, 2012, Kristina re-joined the Streeterville Club, now owned by defendants, and continued to use the elevator to access the locker room and from the locker room, to access the pool.

23. Kristina continued to use the Club until about the summer of 2015 when the elevator to the floor with the locker rooms broke.

24. Kristina cannot use the pool when the elevator is broken because she cannot change into or out of a swim suit without both the privacy of the locker room and the physical space on which to receive assistance in changing her outfit.

25. Defendant's customers without mobility impairments continued to use the locker room and the pool by climbing stair that joined the floors that contained each element of the health club.

26. Shortly after Kristina learned that the elevator was broken, she and her mother met with a temporary manager and informed that Kristina needed to have the elevator repaired promptly in order to continue to use the club.

27. Defendant did not repair the elevator after Kristina's complaint.

28. On or about August of 2015, Kristian called the Streeterville Club and was told that the elevator was still not operating.

29. Frustrated, on September 9, 2015, Kristina posted a complaint about the Streeterville Club's failure to repair the elevator on the Club's Facebook page.

30. After that post, an individual who identified herself as Kaycee called Kristina. Kaycee identified herself as a manager at the Streeterville Club, indicated that she was looking into the matter of the broken elevator, and promised to update Kristina on the resolution.

31. Kristina did not receive an update from Kaycee.

32. On October 5, 2015, some of Kristina's friends called the Streeterville Club to express their concern that the elevator remained unrepaired and Kristina could not use the facilities.

33. Kristina received no updates after these complaints by her friends.

34. On or about January of 2016, another friend of Kristina's, an individual named James Murphy, called Kaycee on Kristina's behalf and inquired about the elevator repair.

35. During that phone call, Kaycee informed James that the elevator would be repaired in the next few weeks.

36. The elevator was not repaired.

37. On April 18, 2016, through counsel, Kristina sent defendant a letter demanding that the elevator be repaired.

38. On April 29, 2016, Kristina's counsel spoke by phone with Jeremy Hufton, who identified himself as an attorney for defendant. During this call, Mr. Hufton stated that defendant had begun the process of soliciting bids for repair of the elevator and that the bid process was scheduled to end by the middle of May, 2016.

39. During the phone call with Mr. Hufton, Mr. Hufton indicated his willingness to meet and discuss temporary accommodations that could allow Kristina to use the pool until defendant repaired the elevator. Mr. Hufton also said defendant would refund Kristina's membership fees for the period when the elevator was broken.

40. On May 4, 2016, Kristina's counsel received a voicemail from William Tarnow, local counsel for defendant. Communications growing out of that phone call resulted in the parties meeting at the Streeterville Club on June 9, 2016 to consider temporary accommodations.

41. On June 14, 2016, in an email following up on the possibility of temporary accommodations, Mr. Tarnow stated that he had not heard back on the status of the elevator repair.

42. On July 6, 2016, after further inquiry, Mr. Tarnow indicated that he did not have any information about the elevator repair at that time.

43. On July 19, 2016, Kristina's counsel sent local counsel a letter requesting that defendant complete the bidding process for repair or replacement of the elevator no later than August 3, 2016.

44. On or about the beginning of August of 2016, the Streeterville Club completed temporary modifications to an individual pool side bathroom that had been proposed back in June as a temporary accommodation to allow Kristina to access the pool while she waited for repair of the elevator.

45. As of the filing of this lawsuit, the elevator at the Streeterville Club remains broken and inoperable.

## VI. STATEMENT OF LAW

46. The Congressional findings supporting the passage of the Americans with Disabilities Act (ADA) recognized that "society has tended to isolate and segregate individuals with disabilities." 42 U.S.C. § 12101(a)(2).

47. Congress also recognized that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural . . . barriers . . . failure to make modifications to existing facilities . . . segregation, and relegation to lesser services . . . ." 42 U.S.C. § 12101(a)(5).

48. Accordingly, the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any

person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

49. The ADA defines discrimination to include "a failure to design and construct facilities for first occupancy later than [January 26, 1993], that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter . . . ." 42 U.S.C. § 12183(a)(1).

50. The ADA also provides that "[a] public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities . . . ." 28 C.F.R. § 36.211(a).

## VII. CLAIM FOR RELIEF

51. Plaintiff realleges and incorporates by reference the allegations in the remainder of this Complaint as if fully set forth herein.

52. Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a).

53. Defendants own, lease, lease to, or operate a place of public accommodation. 42 U.S.C. § 12181(7)(L).

54. Kristina is a person with a disability, as that term is defined in 42 U.S.C. § 12102.

55. Defendants have violated the ADA by denying plaintiff the benefits of the goods, services, facilities, privileges and advantages of a health club through actions that include but are not limited to the discriminatory refusal to maintain the elevator in the Streeterville Club.

56. In the absence of an injunction, defendants will continue in the future to discriminate against plaintiff in the full and equal enjoyment of the goods, services, facilities, privileges and advantages of a health club on the basis of disability.

57. Plaintiff has been damaged and will continue to be damaged by this discrimination.

## VIII. <u>RELIEF REQUESTED</u>

WHEREFORE, the Plaintiffs pray that this Court:

A. Declare that the Defendant's conduct and refusal to act, as set forth above, violates the ADA;

B. Enter a permanent injunction enjoining the Defendants to bring the subject property into compliance with the ADA;

C. Enter a judgment against Defendant for plaintiffs' reasonable attorneys' fees and costs; and

D. Grant the Plaintiff such further relief as this Court deems just and proper.

Dated: 9/20/2016                                            Respectfully submitted,

                                                                                     /s/ Charles R. Petrof
                                                                                      One of the Attorneys for Plaintiff

<u>Attorneys for Plaintiff</u>:

Charles R. Petrof
Access Living of Metropolitan Chicago
115 W. Chicago Ave.
Chicago, IL 60654
312-640-2124
tty 312-640-2169
cpetrof@accessliving.org